[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was commenced by the plaintiff husband on April 4, 1995 seeking a dissolution of the parties marriage on the grounds of irretrievable breakdown. He also seeks an equitable distribution of the estates of the parties and such other relief the court finds reasonable and equitable.
On April 24, 1995 the wife appeared and on April 25, 1995 filed an Answer and Cross Complaint seeking a dissolution of the marriage and other equitable relief
On June 21, 1996 the plaintiff filed an Amended Complaint. After having been claimed to the limited contested list the matter was tried to the court over a three day period. At trial both plaintiff and defendant testified as well as other witnesses including a division coordinator from the Office of the Comptroller State of Connecticut, a pension administrator from the State Teachers Retirement Fund, a real estate appraiser, and two expert actuary witnesses. Both parties submitted financial affidavits and proposed orders. At trial thirty eight exhibits were admitted consisting of tax returns, pension evaluations, personal financial information, summaries of bills, and correspondence between the parties.
From all the evidence presented the court finds the following facts. The parties were married on August 14, 1965 at East Elmhurst, Queens, New York. Both parties have resided CT Page 6025 continuously in Connecticut for more than one year prior to the filing of the complaint in this matter. There are three children of the marriage none of whom are minors. Erica was born in 1969, Jessica in 1971 and David in 1973. No other children were born to the defendant since the date of this marriage. Neither spouse is a recipient of public assistance, all statutory stays have expired, and the court has jurisdiction. The court finds that all the allegations of the complaint proven and that the marriage has broken down irretrievably.
The plaintiff is 54 years of age and is the current president of Eastern Connecticut State University. He is highly educated having received his doctorate degree in philosophy from Ohio State University in 1971. He has been in his current position at the university for nine years. He suffers from a variety of health problems having twice undergone surgery for two forms of cancer in 1993 and 1995. He has also undergone surgery for the removal of a disk in his neck and is on cholesterol medication. While there are no positive indications of the presence of cancer he is still within the observation period and regularly visits his physician for check-ups.
The defendant who is 51 years old is also highly educated having received her Masters Degree from Miami of Ohio and has credits toward her doctors degree. Presently she is employed by the Hartford Public School system as a music teacher. She has been so employed since 1979. She is in good health and presently resides in Rocky Hill, Connecticut.
The plaintiff and defendant met in 1964 in Ohio and were married in 1965. At the time of their marriage the plaintiff was working as an elementary school teacher and the defendant was completing her education. Approximately two years after their marriage the defendant began to work as a school teacher as well. Neither plaintiff nor defendant brought any significant financial assets into the marriage. The defendant worked up to the time of the birth of their first child Erica. She then went back to work until 1971 when their second child, Jessica, was born. During this period of the marriage the defendant handled the responsibilities of raising the children, maintaining the household, and working as a teacher. The defendant, at trial, described their marriage as a "traditional" one. The defendant also had a desire throughout the marriage to utilize her not inconsiderable talents as a professional opera singer. While this talent was realized in a limited fashion her commitment to the CT Page 6026 family and her husband prevented her from developing it further. In 1972 the parties moved to Pennsylvania where their third child, David, was born in 1973. In 1977 the decision was made to move to Connecticut. Approximately two years after the parties moved to Connecticut the defendant applied for and obtained a position with the Hartford Public School system.
At this point in their marriage the parties were experiencing no significant marital problems. From the time the parties were married until the time that they separated the defendant was responsible for management of the household finances and both parties contributed their earnings to a common fund.
In 1980 the plaintiff applied for positions with other institutions one of which was Kent State University in Ohio. When the parties talked about these applications differences arose. The defendant expressed to the plaintiff her desire to stay in Connecticut as it was important to the children who had school ties and friends. It was also important to her to remain in their then present location as she had tired of moving so frequently. The family had over the previous eight year period lived in seven different locations. The plaintiff, on the other hand, saw this as another positive career move and a chance to move back to his home state of Ohio. He accepted the position at Kent State when it was offered but was forced to withdraw his acceptance when the defendant refused to move. The plaintiff testified to feelings of disappointment and "hurt" because of the defendant's refusal to move as he felt this was a breach of their friendship. This despite the fact that the defendant had advised him that she had extreme reluctance to move prior to his application for and acceptance of the position.
In 1985 the plaintiff engaged in his first extra marital affair. When the defendant confronted him with her knowledge of this affair he admitted to it and promised it would not happen again. The plaintiff testified that he thought that they had, over subsequent years, been able to "get passed that" problem. In 1990 the plaintiff again engaged in another extra marital affair that was more intense than the one that had taken place in 1986. Upon the defendant's discovery of this affair she advised the plaintiff that she was considering leaving him but the plaintiff refused to believe that this would, in fact, be the case. The defendant claims that this extra marital affair caused a total breach in her confidence and trust in the plaintiff. The court finds that the plaintiff's infidelity did in fact cause the CT Page 6027 irretrievable breakdown of this marriage. From all the evidence presented it is clear that this marriage, despite the plaintiff's frequent absences for professional meetings and his intense desire to succeed leading to less time spent with the family, would have survived but for the plaintiff's engaging in these affairs.
In March of 1993 the defendant, without prior notice, left the plaintiff and moved out of the marital residence. She did not advise the plaintiff as to where she was residing but did do an accounting of the existing debt and set out a summary of the bills to be paid and when they were due. As of March of 1993 the court finds that the total marital debt was approximately $279,500 without taking into consideration tax obligations that were unknown and unliquidated at the time. Of that debt the defendant advised the plaintiff that she would assume responsibility for approximately $50,600 of it and she took those bills with her when she separated from the plaintiff. Over the next three years the defendant lived in an apartment and continued her employment in the Hartford Public School system and the plaintiff continued to reside in the family home. The plaintiff paid the mortgage, taxes and insurance on the family residence, made payments towards the debt left by the defendant, and paid his living expenses. During this same time frame the defendant paid rent on an apartment, made payments toward the bills that she took upon separation, and paid her living expenses. Additionally, the plaintiff paid the interest on his son's student loan and the defendant paid the interest on her daughter's student loan.
The court finds the following values of the assets of the parties. The marital residence has a value of approximately $192,000 with an existing mortgage of $168,000. The timeshare located in Kauai, Hawaii has a value of approximately $5,000. The Beneficial Standard and Boston Equity Investment Tax Shelters have an indeterminate value as insufficient evidence was presented to make a determination otherwise. It appears, however, that neither is a significant asset. The plaintiff's pension has an actuarially established present day value of $1,250,000. The defendant's pension has an actuarially established present day value of $153,600 without consideration of any future purchase options of past service that the defendant is entitled to exercise. The value of the plaintiff's accrued vacation pay is approximately $65,000. The value of the defendant's automobile is approximately $9,000. The plaintiff does not own an automobile as CT Page 6028 his transportation is supplied by his employer. The plaintiff, however, calculates and reports to his employer the value of his personal use of the vehicle and pays taxes on this amount as additional compensation. All other assets not specifically mentioned herein are found to be as set forth on the financial affidavits of the parties.
Extensive testimony was elicited with respect to the structure and valuation of the plaintiff's pension particularly with regards to the various options that can be selected at retirement. In particular there are two factors which are important to understand in fashioning any order with respect to the plaintiff's pension. Marie Benedetto, the division coordinator from the State of Connecticut Comptroller's Office Benefits Division, testified that the plaintiff can select the pension option he desires only at the time of his retirement. She testified that the earliest the plaintiff could retire is at age 55 and he could start collecting benefits one month later. There are four options available to the plaintiff at retirement. They are Option 1(D) a straight annuity life which provides the highest monthly benefit to the retiree but payments cease on the death of retiree; Option 2(A) which provides a reduced monthly benefit to the retiree for life, and thereafter the surviving spouse receives 50% of that benefit for her lifetime; Option 3(B) which is a contingent annuity which pays to the retiree a reduced monthly benefit for the life of the retiree and thereafter pays either a 50% or 100% benefit to the beneficiary selected by the retiree; and Option 4(C), which is a 10 year or 20 year period certain plan, which provides for a reduced monthly benefit for the retiree's lifetime, however, if the retiree should die prior to either the tenth or twentieth year after the date of retirement the remaining payments for the term selected are paid to the retiree's beneficiary. (See defendant's Exhibit R)
The second factor to be considered in fashioning these orders is the requirement of the plan that, if the retiree has been married for at least one year prior to retirement, written spousal consent will be required by the plan administrator if the retiree does not provide a lifetime guarantee (50% or 100%) for that spouse. (Defendant's Exhibit R, p. 17). Benedetto testified that the plan would not recognize a court order or an election by the retiree to provide benefits to the defendant if the plaintiff has been remarried for at least one year prior to his actual retirement unless a written waiver from the plaintiff's new spouse was submitted to the retirement board. Thus the CT Page 6029 defendant's interest in the pension fund can be defeated if the plaintiff remarries at least one year prior to his retirement and fails to obtain his new spouses waiver as required by the plan.
After considering all of the evidence in light of the statutory mandates set forth in General Statutes § 46b-81 and § 46b-82 the court issues the following orders.
 1. A decree is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown, all of the allegations of the complaint having been proven.
 2. Plaintiff and defendant shall cooperate in the marketing and sale of the marital residence at 9 Charles Lane, Mansfield, Connecticut. Any closing on the sale of the residence shall not take place prior to the plaintiff attaining the age of 55. The proceeds of the sale of the residence after paying all closing costs shall be divided equally between the parties.
 3. A domestic relations order shall be drafted by defendant's counsel in substantial conformity to defendant's Exhibit M with paragraph II A of that exhibit providing for a dollar monthly benefit to the defendant of $3495, upon the retirement of the plaintiff. Said order shall be drafted by defendant's counsel and submitted with the judgment file.
 4. The plaintiff, upon retirement, shall select as his pension payout option the Tier I, Option 3(B) naming the defendant as the contingent annuitant and shall further select the 50% contingent benefit option as set forth in the plan.
 5. The plaintiff shall execute and deliver to the defendant any authorization necessary to permit the defendant to obtain any information she requires concerning the status of the plaintiff's pension or the benefits payable thereunder from the Connecticut State Employees Retirement fund.
 6. The plaintiff shall name as sole and irrevocable beneficiary the defendant on the existing policy of life insurance having a face value of $200,000. The defendant shall, upon the plaintiff's compliance with order number four of these orders and her receipt of the first pension payment disbursement in the amount of $3495, execute any documents required to terminate her as sole beneficiary of the life insurance policy thereby CT Page 6030 allowing the defendant to name a different beneficiary.
 7. The Boston Equity tax shelter shall be divided equally between the plaintiff and the defendant and all tax consequences resulting from any sale shall also be shared equally.
 8. The Beneficial Standard account shall be liquidated as soon as practicable and the proceeds shared on an equal basis.
 9. The Kauai, Hawaii timeshare shall be the sole property of the plaintiff and the defendant shall cooperate in the transfer of her interest to the plaintiff.
 10. The defendant's automobile and personal property in her possession shall remain her property free of any claims by the plaintiff
 11. The plaintiff's personal property in his possession shall remain his property free of any claims by the defendant. The defendant's personal property in her possession shall remain her personal property free of any claims by the plaintiff. The parties shall cooperate in the division of any other items of personalty not previously agreed upon. The court shall retain jurisdiction in the event the parties are unable to do so.
 12. The plaintiff shall pay to the defendant within two years from the date of this memorandum or on the date of his retirement, whichever comes first, the sum of $35,000 as her distribution on the value of the accumulated vacation pay.
 13. The plaintiff shall be responsible for the remaining tax liability to the Internal Revenue Service in the approximate amount of $9,000. The plaintiff shall pay this liability within twelve months of the date of this memorandum and shall hold the defendant harmless from this liability.
 14. Except for the IRS obligation described in the preceding order and listed on the defendant's financial affidavit, Schedule B as $59,831, all other liabilities contained on that schedule shall be the obligation of the defendant and she shall hold the plaintiff harmless from any liability thereon.
 15. All of the liabilities set forth on the plaintiff's financial affidavit Schedule C shall be the obligation of the plaintiff and he shall hold the defendant harmless from any liability CT Page 6031 thereon.
 16. The plaintiff shall pay to the defendant as alimony and support $400 per week until such time as she either dies, remarries, or begins to receive the benefits set forth in order number three set forth herein. Upon the occurrence of her remarriage or receipt of benefits this alimony award shall be reduced to $1 per year. It is the intent of these orders that, upon the defendant receiving that portion of the plaintiff's retirement fund benefits set forth above that alimony will no longer be necessary for the support of the plaintiff. Further it is the intent of these orders to allow the defendant the ability to seek an upward modification of the alimony award upon the plaintiff's retirement if, for whatever reason, she does not receive the retirement benefits set forth in order number three.
 17. The defendant's retirement fund with the State Teachers Retirement Fund shall continue to be the sole property of the defendant free of any claims by the plaintiff.
 18. The plaintiff shall pay $8000 within ninety days of this decision towards the defendant's counsel fees.
 19. The tax benefit received as a result of the Wassau investment loss in 1995 shall inure solely to the benefit of the plaintiff
 20. Plaintiff's counsel shall prepare and file within thirty days of this decision a judgment file and both counsel shall sign the judgment file.
Zarella, J.